1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

SEATTLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. _____ |
| Plaintiff, | |
| vs. | COMPLAINT |
| KIRK SPERRY, and SPERRY AND SONS CAPITAL INVESTMENTS, LLC, | |
| Defendants. | |

Plaintiff Securities and Exchange Commission ("the Commission") alleges:

## SUMMARY OF THE ACTION

1.      Between September and December 2015, Kirk Sperry and Sperry and Sons Capital Investments, LLC ("Sperry and Sons") defrauded investors in connection with a multi-million dollar residential real estate project called Fendee Estates Phase II ("Fendee II") located in Williston, North Dakota.

2.      At the end of September 2015 and beginning of November 2015, Kirk Sperry reached out to two investors ("Investor A" and "Investor B") to persuade them to invest in

SEC V. SPERRY
COMPLAINT

1

SECURITIES AND EXCHANGE COMMISSION
44 MONTGOMERY STREET, SUITE 2800
SAN FRANCISCO, CA  94104
TELEPHONE:  (415) 705-2500

1  Fendee II and provided them with a prospectus detailing the investment.  He promised that the

2  investment would be secured by a first position mortgage on the Fendee II property and that

3  there were already purchase agreements in place for twin home lots that would infuse capital

4  into the project, thus generating high returns for investors.  In reality, an earlier investor

5  already had the sole first position mortgage on the Fendee II collateral and the purchase

6  agreements had been cancelled at the end of August 2015.

7       3.     After Kirk Sperry made the misrepresentations and material omissions, these

8  two investors invested a combined $125,000 between October and November 2015.  Despite

9  the claims made in the Fendee II prospectus that the investors' funds would be used for

10  Fendee II project costs, Sperry and Sons, with Kirk Sperry's authorization, actually used a

11  significant portion of the investors' funds to pay investors in other projects.  Sperry and Sons

12  was never able to raise sufficient funds to complete the Fendee II project and never returned

13  the investors' money.

14      4.     As a result of their fraudulent conduct, Defendants have violated and will

15  continue to violate the federal securities laws.  The Commission therefore seeks an order

16  enjoining Defendants from further violations of the federal securities laws, ordering

17  disgorgement of any ill-gotten gains plus prejudgment interest as well as civil monetary

18  penalties, and providing for other equitable and related relief as may be appropriate.

19                          **JURISDICTION AND VENUE**

20      5.     The Commission brings this action pursuant to Sections 20(b), 20(d), and 22(a)

21  of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], and

22  Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C.

23  §§ 78u(d) and 78u(e)].

24      6.     Each of the trust interests offered and sold by Defendants is an investment

25  contract, and therefore a "security" as that term is defined under Section 2(a)(1) of the

26  Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [5 U.S.C. §

27  78c(a)(10)].

28

7.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22 of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v], and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

8.     Defendants, directly or indirectly, have made use of the means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the acts, practices, courses of business, and transactions alleged herein.

9.     Venue is proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)].  Certain of the acts, practices, courses of business, and transactions constituting the violations alleged herein occurred within the Western District of Washington, where the Defendant Sperry and Sons was headquartered.  Pursuant to LCR 3(e)(1), assignment to the Seattle Division is appropriate because much of the relevant conduct took place in King County.  In addition, Kirk Sperry resides in King County.

## DEFENDANTS

10.     **Kirk Sperry**, age 44, is a resident of Issaquah, Washington and is the principal and one-third owner of Sperry and Sons.  He founded Sperry and Sons in 2012 along with his father and brother.

11.     **Sperry and Sons Capital Investments, LLC** is a Nevada limited liability company with its former principal place of business in Bellevue, Washington.  From 2012 to approximately 2018, Sperry and Sons was a hard money lending business that pooled investor money to make short-term secured loans to real estate developers.  Sperry and Sons is no longer in operation, but still has an active corporate registration with the Nevada Secretary of State.

## FACTUAL ALLEGATIONS

### A.     Background

12.     Sperry and Sons' business was to engage in trust deed investing which meant that it invested in loans secured by real estate.  Sperry and Sons formed trusts that were

SEC V. SPERRY
COMPLAINT
-3-
SECURITIES AND EXCHANGE COMMISSION
44 MONTGOMERY STREET, SUITE 2800
SAN FRANCISCO, CA  94104
TELEPHONE:  (415) 705-2500

created to make loans to real estate developers.  Sperry and Sons raised funds for these trusts by selling investors an interest in the trusts.  In return for their investments, investors expected to receive interest on the loans, their principal back, and, occasionally, a profit share pre-negotiated with the borrower.  The funds from investors were pooled together in each trust account and used to make the loans and to pay for any project-related costs.

13.     Sperry and Sons raised funds for their investment trusts from family, friends, and acquaintances through the use of email solicitations, telephone calls, and in-person meetings.

14.     Sperry and Sons focused on investments secured by first position and second position deeds of trust or mortgage notes.  The position of the trust deed or mortgage note determined the order that investors were paid in the event of a default and foreclosure on the collateral property.

**B.     The Fendee II Project**

15.     At the beginning of 2015, Sperry and Sons partnered with a developer to raise funds and develop Fendee II, its largest ever investment project.  Fendee II was a multi-million dollar residential project located in Williston, North Dakota.  Williston had experienced an economic boom in then-recent years due to the oil extraction industry and high oil prices.  At the time, Kirk Sperry managed Sperry and Sons full time and he led the efforts to raise funds for Fendee II and to prepare written materials for investor outreach on Sperry and Sons' behalf.

16.     Kirk Sperry helped draft the prospectus for Fendee II and oversaw the revision process to arrive at a final version of the document.  He also provided copies of the prospectus to potential investors.  Additionally, he further exercised his authority over the prospectus by attaching his name and contact information to every page of the document.

17.     The Fendee II prospectus stated that Sperry and Sons was seeking $8,299,500 in investments for Fendee II, which would be "secured by $14.7M in finished lot value . . . ." The Fendee II prospectus included the representation that "presale of (60) twin home lots has already been procured, representing $2.7M in funds that will immediately go towards

1   construction of the first (20) town homes."

2       18.     In return for their investment, the prospectus promised investors "a 10%

3   preferred rate of return during the course of the project and after principal is returned the

4   investors will share in 20% of the total equity monthly cash-flow of (130) constructed and

5   leased townhomes."  The prospectus advertised an estimated 38.4% return on investment for

6   investors.

7       19.     On or about May 19, 2015, Kirk Sperry emailed the Fendee II prospectus to a

8   group of potential investors, including Investor A and Investor B, and solicited funds for

9   Fendee II.  Kirk Sperry wrote in the email that the investment was "a 1st position loan" and

10  touted the projected return to investors of 38.4%.

11      **C.     Fendee II Faced Major Setbacks**

12      20.     Within a few months of beginning to fundraise, Sperry and Sons faced

13  challenges with the project.  By August 2015, Sperry and Sons still had not raised the

14  approximately $8.3 million in funds needed for the Fendee II project.  On or about August 5,

15  2015, a Sperry and Sons email to investors, including Investor A and copying Kirk Sperry,

16  reported that the company had only raised $3.2 million.  Sperry and Sons had failed to even

17  raise the money needed to purchase the land for the Fendee II project.

18      21.     Sperry and Sons was facing a looming deadline to close escrow on the land by

19  the end of August 2015.  According to Kirk Sperry, the developer was under pressure to pay

20  off his existing debt on the land; otherwise, they risked losing the non-refundable deposits,

21  totaling no less than $2.4 million, and the land.

22      22.     On or about August 14, 2015, Kirk Sperry met with others involved in the

23  Fendee II project in Big Sky, Montana.  During this Big Sky meeting, another investor

24  ("Investor C") —a business partner of Sperry and Sons and an existing investor in Fendee

25  II—agreed to provide $1.5 million as a loan to help purchase the Fendee II land.  Kirk Sperry

26  was involved in the negotiation of the loan and its terms.  The $1.5 million loan accrued

27  monthly interest at a rate of ten percent, and the entire unpaid principal balance plus any

28  unpaid interest was due in one year.

SEC V. SPERRY                        -5-          SECURITIES AND EXCHANGE COMMISSION
COMPLAINT                                         44 MONTGOMERY STREET, SUITE 2800
                                                  SAN FRANCISCO, CA  94104
                                                  TELEPHONE:  (415) 705-2500

23.    Notably, in return for the loan, Sperry and Sons gave Investor C sole first position on the Fendee II collateral.  This meant that, contrary to the representations made in the Fendee II prospectus, no other investors could be in first position.

24.    Kirk Sperry signed the first position mortgage for Investor C on August 27, 2015 and it was recorded on September 3, 2015.  Sperry and Sons did not record a mortgage for any other Fendee II investors.

25.    The Fendee II project then suffered another significant setback.  On or about August 27, 2015, Kirk Sperry was informed that the purchase agreements for the Fendee II twin home lots touted in the Fendee II prospectus were cancelled by the developers.  As a result, Sperry and Sons was left without the anticipated $2.7 million in proceeds from these purchase agreements.

**D.    Defendants Made Materially False and Misleading Statements and Failed to Disclose Material Facts**

26.    Undeterred by the setbacks to Fendee II, Kirk Sperry continued to solicit new investments for the project.  Kirk Sperry emailed Investor A and Investor B the Fendee II prospectus again on or about September 25, 2015 and November 3, 2015, respectively.

27.    The Fendee II prospectus that Kirk Sperry sent to Investor A and Investor B was false and misleading.  Kirk Sperry failed to ensure that the prospectus included the recent, material information about the Fendee II project.

28.    First, the prospectus that Kirk Sperry sent to Investor A and Investor B did not disclose that first position on the Fendee II collateral was no longer available, making the statement that the investment was "secured by $14.7M in finished lot value" false and misleading.  Second, the prospectus did not disclose the additional outstanding $1.5 million loan from Investor C, which was accruing interest and had to be paid back by the Fendee II trust regardless of the success of Fendee II.  Third, the prospectus falsely claimed that there were purchase agreements in place for twin home lots representing $2.7 million in proceeds for the project when in fact these purchase agreements had been cancelled.

29.    Between September and November 2015, Kirk Sperry had several

conversations with Investor A and Investor B, separately.  In those conversations, Kirk Sperry did not tell Investor A or Investor B that their investments would be secured by a second position mortgage on the Fendee II collateral.  In fact, both investors believed that their investments in Fendee II would be secured by a first position mortgage.

30.     Based upon the representations made to Investor A by Defendants, on or about October 23, 2015, Investor A wired a $70,000 investment to the Fendee II trust account held by Sperry and Sons.

31.     Based upon the representations made to Investor B by Defendants, on or about November 12, 2015, Investor B wired a $55,000 investment to the Fendee II trust account.

**E.     Sperry and Sons Used Investor Money to Make Unauthorized Payments**

32.     In addition to making the above misrepresentations and material omissions, Kirk Sperry also engaged in further deceptive conduct.  After Investor A and Investor B transferred their funds to the Fendee II trust account, Sperry and Sons, with Kirk Sperry's knowledge and consent, misappropriated approximately $50,000 of their funds.

33.     Kirk Sperry managed the finances of Sperry and Sons and supervised the firm's accountant who handled the company's day to day accounting.  At the direction of Kirk Sperry, or his brother or father if Kirk Sperry was not available, the firm's accountant made investor interest payments, money transfers, and disbursements to and from Sperry and Sons' bank accounts, including the Fendee II trust account.  When large transactions were initiated, Kirk Sperry received email notifications from the bank confirming the transactions.  Whether through communications with the firm's accountant, email notifications from the bank, or online banking, Kirk Sperry was aware of all Fendee II trust account transfers and payments.

34.     As laid out in the Fendee II prospectus, Sperry and Sons told investors it would use their funds for Fendee II project costs.  The prospectus provided a table detailing the use of the project funds—$4,687,000 to pay off an existing loan, $2,397,500 for infrastructure costs, $745,000 in preferred interest reserves, $320,000 in a management/origination fee, and $150,000 for an extension fee for existing debt, all of which totaled the $8,299,500 sought from investors.

SEC V. SPERRY
COMPLAINT

-7-

SECURITIES AND EXCHANGE COMMISSION
44 MONTGOMERY STREET, SUITE 2800
SAN FRANCISCO, CA  94104
TELEPHONE:  (415) 705-2500

35.     However, within a month of when Investor A and Investor B made their investments and transferred their funds into the Fendee II trust account, Sperry and Sons transferred approximately $50,000 from the Fendee II trust account to make interest payments to investors in non-Fendee II projects.  Kirk Sperry received at least two bank email notifications regarding these transfers, representing approximately $40,000.  These payments were contrary to the representations made regarding the use of proceeds in the Fendee II prospectus.

36.     Investor A and Investor B were never paid back their investments.  However, during the period of September to December 2015, Kirk Sperry received approximately $27,000 in compensation from Sperry and Sons.

37.      Soon after Investor A and Investor B invested in Fendee II, the project collapsed and the land development was never completed.  Contrary to the representations made to them, these investors were left without recourse because Kirk Sperry never recorded a mortgage note (even in second position) for these investors.

38.     Kirk Sperry knew, or was reckless in not knowing, that  his representations about the fist position mortgage on the Fendee II collateral were false and misleading at the time he made them because he was in possession of the true facts.  As one of the owners of Sperry and Sons and the main person managing the Fendee II project, Kirk Sperry knew the truth about the first position mortgage given to Investor C.  Indeed, Kirk Sperry was the one who signed the first position mortgage on the Fendee II collateral that gave Investor C the first position.

39.     Kirk Sperry knew, or was reckless in not knowing, that the statements in the prospectus about the existence of the purchase agreements and $2.7 million in expected proceeds were false and misleading.  He was notified of the cancellation of the purchase agreements for the Fendee II twin home lots at the time of the cancellation.  Nevertheless, he provided the false and misleading Fendee II prospectus to Investor A and Investor B.

40.     Kirk Sperry knew, or was reckless in not knowing, that the prospectus failed to disclose the $1.5M loan plus interest owed to Investor C.  Kirk Sperry helped negotiate the

$1.5 million loan, yet he failed to revise the prospectus to reflect this additional debt or the fact that Fendee II funds would be used to pay it off.

## FIRST CLAIM FOR RELIEF

*Violations of Section 10(b) of the Exchange Act and*
*Rule 10b-5 Thereunder Against all Defendants*

41.     The Commission realleges and incorporates by reference Paragraphs 1 through 40 above.

42.     By engaging in the conduct described above, Defendants directly or indirectly, acting with scienter, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security: employed devices, schemes or artifices to defraud; made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon another person.

43.     Defendants each have violated and, unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

## SECOND CLAIM FOR RELIEF

*Violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act Against all Defendants*

44.     The Commission realleges and incorporates by reference Paragraphs 1 through 40 above.

45.     By engaging in the conduct described above, Defendants have, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, employed a device, scheme or artifice to defraud with scienter; and engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

1      46.    Defendants each have violated and, unless restrained and enjoined, will

2  continue to violate Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§

3  77q(a)(1) and 77q(a)(3)].

4                              **THIRD CLAIM FOR RELIEF**

5        *Violations of Section 17(a)(2) of the Securities Act Against all Defendants*

6      47.    The Commission realleges and incorporates by reference paragraphs 1 through

7  40 above.

8      48.    By engaging in the conduct described above, Defendant Sperry and Sons has,

9  directly or indirectly, in the offer or sale of securities, by use of the means or instruments of

10  transportation or communication in interstate commerce or by use of the mails, obtained

11  money or property by means of an untrue statement of material fact or omission to state a

12  material fact necessary in order to make the statements made, in light of the circumstances

13  under which they were made, not misleading.

14      49.    Defendant Sperry and Sons has violated and, unless restrained and enjoined,

15  will continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

16      50.    By engaging in the conduct described above, Defendant Kirk Sperry aided and

17  abetted the violations by Sperry and Sons of Section 17(a)(2) of the Securities Act [15 U.S.C.

18  § 77q(a)(2)], in that he knowingly or recklessly provided substantial assistance to Sperry and

19  Sons in committing these violations, and is therefore liable as an aider and abettor pursuant to

20  Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)].

21                             **PRAYER FOR RELIEF**

22      WHEREFORE, the Commission respectfully requests that this Court:

23                                 I.

24      Permanently enjoin Defendants Kirk Sperry and Sperry and Sons from, directly or

25  indirectly, violating the applicable provisions and rules of the Federal securities laws as

26  alleged and asserted above.

27                                II.

28      Enter an order requiring Defendant Sperry and Sons to disgorge the ill-gotten gains

SEC V. SPERRY               -10-        SECURITIES AND EXCHANGE COMMISSION
COMPLAINT                            44 MONTGOMERY STREET, SUITE 2800
                                              SAN FRANCISCO, CA  94104
                                              TELEPHONE:  (415) 705-2500

1   received as a result of the violations alleged herein, plus prejudgment interest thereon.

2                                   III.

3        Enter an order requiring Defendants Kirk Sperry and Sperry and Sons to pay civil

4   monetary penalties pursuant to Section 20(d) of  the Securities Act [15 U.S.C. § 77t(d)], and

5   Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

6                                   IV.

7        Retain jurisdiction of this action in accordance with the principles of equity and the

8   Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders

9   and decrees that may be entered, or to entertain any suitable application or motion for

10  additional relief within the jurisdiction of this Court.

11                                  V.

12       Grant such other and further relief as this Court may determine to be just and

13  necessary.

14  Dated:  September 9, 2020

15                                Respectfully submitted,

16

17                                __/s/ Silvana A. Quintanilla_____
                                  Silvana A. Quintanilla (Conditionally
18                                Admitted Pursuant to LCR 83.1(c)(2))
                                  Securities and Exchange Commission
19                                44 Montgomery Street, Suite 2800
                                  San Francisco, California 94104
20                                Telephone: (415) 705-2500
                                  Facsimile: (415) 705-2501
21                                Email: quintanillas@sec.gov
                                  *Attorney for Plaintiff Securities and*
22                                *Exchange Commission*

23

24

25

26

27

28